Michael A. Geibelson, Bar No. 179970
MAGeibelson@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
Rebecka M. Biejo, Bar No. 240504
RMBiejo@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:   (310) 552-0130
Facsimile:    (310) 229-5800

Attorneys for Defendant
Best Buy Stores, L.P. (erroneously sued
and served herein as Best Buy Co., Inc.)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE SUB CORPORATION, LTD., a California Corporation,<br><br>  Plaintiff,<br><br>v.<br><br>BEST BUY CO., INC., a Minnesota Corporation doing business in California, and DOES 1 through 50, inclusive,,<br><br>  Defendant. | Case No.  CV07-5822 R (CTx)<br><br>[Assigned to Honorable Manuel. L. Real]<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>Complaint Filed:  August 3, 2007 |

After consideration of the papers in support of and in opposition to Defendant Best Buy Stores, L.P.'s (erroneously sued and served herein as Best Buy Co., Inc.) (hereinafter, "Best Buy") Motion for Summary Judgment against Plaintiff THE SUB CORPORATION, LTD. (hereinafter "Sub Corp")  and the oral argument of counsel on June 2, 2008 at 10:00 a.m. and August 4, 2008 at 10:00 a.m., the Court makes and issues the following its Findings of Fact and Conclusions of Law

## I.
## **FINDINGS OF FACT**

**Allegations of the Complaint**

1. Sub Corp owns and operates a store in San Luis Obispo doing business as Cheap Thrills Records.

[Complaint, at ¶ 1].

2. Sub Corp filed its Complaint against Best Buy on August 3, 2007 alleging that, since Best Buy opened its store in San Luis Obispo in 2002, it has engaged in "loss leader" practices by selling newly released compact discs ("CDs") and digital video discs ("DVDs") below cost.

[Complaint, at ¶¶ 9-11].

3. Sub Corp alleges that this conduct violates *Business and Professions Code* Section 17044, a part of the Unfair Practices Act (*Business and Professions Code* Section 17000, *et seq.* ("UPA")) and the Unfair Competition Law (*Business and Professions Code* Section 17200, *et seq.* ("UCL")).

[Complaint, at ¶¶ 9-11].

4. Based on these allegations, Sub Corp's Complaint asserts two causes of action: (1) for an "Injunction"; and (2) for "Damages", both based on unfair practices under Section 17044 of the UPA and "unfair competition" under the UCL

[Complaint, at ¶¶ 21-34].

5. Sub Corp's Complaint alleges that Best Buy has engaged in "loss leader" practices with the purpose or intent of injuring competitors or destroying competition. However, as set forth below, that allegation is unsupported by the evidence presented, and the statutory presumptions that may be applicable to the claims have been rebutted by Best Buy's evidence.

[Complaint, at ¶¶ 19, 24, 25].

**Best Buy's Sales Practices**

6. Best Buy is a leading retailer of consumer electronics and media with

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  over 950 stores in the United States and significant online sales.

2  [Thorson Decl. ¶2; Hogan Decl. ¶2].

3  7. With limited exceptions not applicable here, Best Buy sets prices on a uniform, national basis because: (1) it would be prohibitively expensive and labor intensive to price DVDs and CDs on a regional or more local level; and (2) the only competitors Best Buy considers when pricing its DVDs and CDs are other large, national retailers (sometimes referred to as "big box stores") whose market share in the national DVD or CD market is greater than approximately 5%: Wal-Mart, Target, Circuit City, Trans World Entertainment/F.Y.E., Amazon.com, Barnes & Noble, and Borders (hereinafter referred to as "Best Buy's Competitors").

11 [Thorson Decl. ¶¶ 3-5; Hogan Decl. ¶¶ 3-5].

12 8. Best Buy's trade area is national in scope.

13 [Thorson Decl. ¶¶ 3-5; Hogan Decl. ¶¶ 3-5; Bannick Decl.; Hoch Decl. at Ex. "A", ¶¶ 7, 11-13, 24, 26-45.]

15 9. Sales volumes of CDs and DVDs are highest in the first two to three weeks after a release. Thus, Best Buy uses predictive pricing models to determine the likely prices at which Best Buy's Competitors will sell identical products, and tries to meet those prices because consumers are sensitive to price in these markets such that DVDs and CDs are essentially a commodity, and a failure to price a product competitively will result in lost sales. The predicted prices are based upon a number of factors, none of which involves an intent to injure competitors or destroy competition, much less to injure Plaintiff Sub Corp.

23 [Thorson Decl. ¶¶7-10; Hogan Decl. ¶¶6-10].

24 10. Because DVDs and CDs are essentially commodities, it is not Best Buy's intention to beat Best Buy's Competitors' prices, but rather to meet or be acceptably close to them so as not to lose sales. This is because a loss of market share can result in tens of millions of dollars in lost sales.

28 [Thorson Decl. ¶12; Hogan Decl. ¶12].

1    11.    To assure the effectiveness of Best Buy's predictive pricing method for new releases of DVDs and CDs, Best Buy monitors the advertised prices of Best Buy's Competitors.

[Thorson Decl. ¶13; Hogan Decl. ¶13].

12.    Best Buy has more often than not either met or been undercut by the prices of newly released DVDs and CDs and has lost market share in DVD retail sales overall. The need to meet Best Buy's Competitors' prices has been amplified by the advent of other technologies for the delivery of movies and music to consumers, the prices of which are consistently lower than physical copies of DVDs and CDs – namely OnDemand and Pay-Per-View services for movies, and digital music download and subscription services for music (including both legal commercial sites such as Apple's iTunes and RealNetworks' Rhapsody To Go, as well as illegal file-sharing through sites such as Napster.

[Thorson Decl. ¶13; Hogan Decl. ¶13].

13.    When Best Buy has limited the DVD quantities a customer may buy, it has done so to avoid the loss of customer loyalty and trust as a result of the product being unavailable at the stores. Customer loyalty and trust take a long time to establish and a relatively short time to lose. Setting prices to meet competition and avoid that loss demonstrates an absence of any intent to injure competitors or destroy competition.

[Thorson Decl. ¶14].

14.    The evidence submitted by Best Buy has shown the absence of any purpose or intent to injure competitors or destroy competition.

15.    Sub Corp has offered no admissible evidence to rebut the absence of any purpose or intent by Best Buy to injure competitors or destroy competition.

16.    Sub Corp has offered no admissible evidence to support a finding that Best Buy made a fraudulent statement that caused (or is alleged to have caused) an injury or a loss of money or property.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

17. Sub Corp has offered no admissible evidence to support a finding that Best Buy limits the quantities of the CDs it sells at the price specified in its advertisements.

18. Sub Corp has offered no admissible evidence to support a finding that the prices at which CDs and DVDs were sold or offered for sale were in fact below their invoice or replacement cost.

19. Sub Corp has offered no admissible evidence to support a finding that Best Buy's alleged sales practices are unfair. Indeed, the evidence shows that Best Buy's use of its predictive pricing model for CDs and DVDs is a fair way for Best Buy to compete with Best Buy's Competitors that sell the same products for the short period after their release. The fairness of the practice is demonstrated by, among other things, that Best Buy has more often than not either met or been undercut by the national competitors with which it competes, and has lost market share in DVD retail sales overall, and by the consistently lower prices of its online competition.

[Thorson Decl. ¶13; Hogan Decl. ¶13; Hoch Decl. at Ex. "A", ¶¶ 7, 11-13, 24, 26-45.]

Based upon the foregoing Findings of Fact, the Court now makes its,

## II.

## **CONCLUSIONS OF LAW**

**A.  Jurisdiction and Venue**

20. This Court has original jurisdiction over this matter under the Court's diversity jurisdiction because Defendant Best Buy Stores, L.P. (erroneously sued and served herein as Best Buy Co., Inc.) is a citizen of the State of Virginia in that it is a Virginia Limited Partnership with its principal place of business in Minnesota, and Best Buy Co., Inc. is a citizen of the State of Minnesota in that it is a Minnesota corporation with its principal place of business located in Minnesota, and because

1 Plaintiff is alleged to be a citizen of the State of California (Complaint at ¶ 1), and
2 because the amount alleged to be in controversy is "in excess of four million dollars
3 ($4,000,000.00)" (Complaint at ¶32).

4     21.    Venue is proper in this district and division pursuant to 28 U.S.C. §
5 1441(a) because this district embraces the county in which the removed action has
6 been pending. See, 28 U.S.C. § 84(c).

**B.**     <u>Summary Judgment Standard</u>

8     22.    Under Rule 56(b), a party against whom a claim is asserted may move
9 for "a summary judgment in the party's favor as to all or any part thereof." Fed. R.
10 Civ. P. 56(b). The moving party has the burden of showing there is no genuine
11 issue as to a material fact, and that it is entitled to judgment as a matter of law. Fed.
12 R. Civ. P. 56(c).

13     23.    Where the non-moving party bears the burden of proof at trial, the
14 moving party has no burden to negate the opponent's claim. *Celotex v. Catrett*, 477
15 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). In other words, the moving party
16 does not have the burden to produce any evidence showing the absence of a
17 genuine issue for trial. *Id.*, at 325. "Instead . . . the burden on the moving party
18 may be discharged by 'showing'—that is, pointing out to the district court—that
19 there is an absence of evidence to support the nonmoving party's case." *Id.*

20     24.    Once this initial burden has been met, the non-moving party must
21 present concrete evidence that there remain genuine issues for trial. *Anderson v.*
22 *Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). The non-
23 moving party must make a sufficient showing on an essential element of its case to
24 avoid summary judgment. *Celotex*, *supra*, 477 U.S. at 322-23. "The mere
25 existence of a scintilla of evidence in support of the [non-moving party's] position
26 will be insufficient; there must be evidence on which a reasonable jury could
27 reasonably find for" the non-moving party. *Anderson*, *supra*, 477 U.S. at 252.

### C. **Best Buy Did Not Have the Purpose Or Intent To Injure Competitors Or Destroy Competition**

25. Sub Corp's claims for injunctive relief and damages are premised, in part, upon a violation of Section 17044, which prohibits retailers from selling or using "any article or product as a 'loss leader' as defined in Section 17030" of the *Business and Professions Code*. Proof of intent to injure competitors or destroy competition must be shown in order to establish a violation of Section 17044. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 178, 83 Cal.Rptr.2d 548 (1999); *Western Union Financial Services, Inc. v. First Data Corp.*, 20 Cal.App.4th 1530, 1540 n. 10, 25 Cal.Rptr.2d 341 (1993) (citing *Hladek v. City of Merced*, 69 Cal.App.3d 585, 591, 138 Cal.Rptr. 194 (1977)); *Dooley's Hardware Mart v. Food Giant Markets, Inc.*, 21 Cal.App.3d 513, 516-517, 98 Cal.Rptr. 543 (1971).

26. Plaintiff relies upon statutory presumptions to establish the requisite purpose of injuring competitors or destroying competition.

27. *Business and Professions Code* Section 17071 provides that "proof of one or more acts of selling or giving away any article or product below cost or at discriminatory prices, together with proof of the injurious effect of such acts, is presumptive evidence of the purpose or intent to injure competitors or destroy competition." To be entitled to a presumption of intent, Sub Corp must show that it suffered an injurious effect as a result of the alleged loss leader sales. *Dooley's Hardware Mart v. Food Giant Markets, Inc.*, 21 Cal.App.3d 513, 517, n. 5, 98 Cal. Rptr. 543 (1971). Plaintiff has offered insufficient evidence of the effect of the alleged practices to support a presumption under Section 17071. Sub Corp did not prove it suffered an injurious effect as a result of the alleged loss leader practices, and thus there is no basis for the imposition of a presumption of purpose or intent under Section 17071.

28. *Business and Professions Code* Section 17071.5 provides, in relevant

part, that "proof of limitation of the quantity of any article or product sold or offered for sale to any one customer to a quantity less than the entire supply thereof owned or possessed by the seller or which he is otherwise authorized to sell at the place of such sale or offering for sale, together with proof that the price at which the article or product is so sold or offered for sale is in fact below its invoice or replacement cost, whichever is lower, raises a presumption of the purpose or intent to injure competitors or destroy competition." Sub Corp did not prove that Best Buy sold or offered for sale CDs or DVDs at prices that are in fact below their invoice or replacement cost to Best Buy, and thus there is no basis for the imposition of a presumption of purpose or intent under Section 17071.5.

29. Even if the presumptions under Section 17071 or 17071.5 were to be applied, Best Buy may rebut the presumption by evidence establishing that it did not have the requisite wrongful purpose or intent. *Cel-Tech*, 20 Cal.4th at 176; *Dooley's*, 21 Cal.App.3d at 518. A qualified employee's declaration concerning the company's intent is adequate to conclusively rebut a presumption of injurious intent. *Tri-Q, Inc. v. Sta-Hi Corp.* (1965) 63 Cal.2d 199, 209, 45 Cal.Rptr. 878.

30. The Declarations of Marlys Thorson and Edward Hogan (and Stephen Hoch) sufficiently rebut the presumptions of Section 17071 and 17071.5, to the extent they are applicable, and establish that Best Buy does not price DVDs or CDs with the purpose or intent to injure competitors or destroy competition.

31. Plaintiff has offered no admissible evidence to rebut Best Buy's evidence of the absence of a purpose or intent to injure competitors or destroy competition.

32. Plaintiff Sub Corp is not entitled to injunctive relief or damages based upon the alleged violation of the Unfair Practices Act

**D.  Best Buy Did Not Engage in Acts of Unfair Competition**

33. In addition to the alleged violation of the UPA, Sub Corp's Complaint includes an allegation that Best Buy's conduct also constitutes "unfair competition"

under the UCL, although the Complaint does not specify whether Sub Corp is asserting a claim for fraudulent, unlawful or unfair business practices. Complaint, at ¶¶ 27, 33.  Summary judgment is appropriate for the absence of evidence supporting a claim under any of these theories.

34. Sub Corp's first cause of action is for injunctive relief; the second cause of action is for recovery of damages.  Injunctive relief is a remedy that is available under the UCL, damages are not damages. *Cal. Bus. & Prof. Code* §17204; *Bank of the West v. Sup. Ct.*, 2 Cal.4th 1254, 1266, 10 Cal. Rptr. 2d 538 (1992).

35. Sub Corp's claim for unlawful business practices, is predicated on Best Buy's alleged violation of the UPA.  It is axiomatic, however, that a UCL claim predicated on violation of an underlying statute fails where that underlying claim is dismissed. *See Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 107 Cal.Rptr.2d 841 (2001) (a claim alleging conspiracy to violate the antitrust laws in which summary judgment has been entered cannot be repled under the UCL); *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal.App.4th 1050, 1060, 28 Cal. Rptr. 3d 933, 938 ("If the [underlying] claim is dismissed, then there is no unlawful act upon which to base the derivative Unfair Competition claim." [internal citations omitted]).  In light of the absence of evidence supporting a violation of the UPA, plaintiff's UCL claim based upon that violation also fails.

36. There is no allegation that Sub Corp's UCL claim is based upon a fraudulent business practice, nor that Sub Corp relied upon a representation, nor that such reliance caused any injury or loss of money or property, all of which prerequisites to the assertion of a UCL violation based upon a fraudulent business practice. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing claim for fraudulent business practices pursuant to Proposition 64 because "[N]one of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the

1   transaction as a result of those advertisements."); *Cattie v. Wal-Mart Stores, Inc.*,
2   504 F. Supp. 2d 939, 948 (S.D. Cal. 2007); *Hall v. Time, Inc.*, 158 Cal. App. 4th
3   847, 857 (2008); *Buckland v. Threshold Enterprises, LTD.*, 155 Cal. App. 4th 798,
4   815-816 (2007).  No evidence was offered establishing a violation of the UCL
5   based upon a fraudulent business practice.

6        37.    A business practice might be deemed "unfair" under the UCL based on
7   "conduct that threatens an incipient violation of an antitrust law, or violates the
8   policy or spirit of one of those laws because its effects are comparable to or the
9   same as a violation of the law, or otherwise significantly threatens or harms
10  competition." *Cel-Tech Communications, Inc.*, *supra,* 20 Cal.4th at 187.  Sub Corp
11  has not made any such showing.  In *Business and Professions Code* Section 17001,
12  the Legislature declared that the policy of the UPA is, "to safeguard the public
13  against the creation or perpetuation of monopolies and to foster and encourage
14  competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and
15  discriminatory practices by which fair and honest competition is destroyed or
16  prevented."  There is no allegation or proof that there is a monopoly in DVDs or
17  CDs; Best Buy's evidence demonstrates that there is not a monopoly.  Best Buy has
18  only traditionally had 12.8 and 15 percent of the market for DVDs and CDs
19  respectively.  (Thorson Decl. ¶12; Hogan Decl. ¶12.)

20       38.    Moreover, it is well settled that "Pricing practices are not unfair
21  merely because a competitor may not be able to compete against them.  Low prices
22  often benefit consumers and may be the very essence of competition." *Cel-Tech*
23  *Communications, Inc.*, *supra,* 20 Cal.4th at 189.  As such, courts must not prohibit
24  "vigorous competition" nor "render illegal any decision by a firm to cut prices in
25  order to increase market share. The antitrust laws require no such perverse result,
26  for [i]t is in the interest of competition to permit dominant firms to engage in
27  vigorous competition, including price competition." *Cargill, Inc. v. Monfort of*
28  *Colorado, Inc.*, 479 U.S. 104, 116, 107 S. Ct. 484, 492 (1986).

39.     The evidence submitted establishes Best Buy's efforts to engage in "vigorous competition" with Best Buy's Competitors. Sub Corp's claim to injunctive relief under the UCL would not serve to "foster and encourage competition" because its effect would be to prohibit Best Buy from competing with its national competitors by effectively taking it out of the market for these commodities. Moreover, such injunctive relief may artificially increase prices for DVDs and CDs thereby harming consumers, which are results antithetical to the antitrust laws.

40.     Indeed, in denying Sub Corp's claim for injunctive relief at the preliminary injunction stage, the Court implicitly recognized that Best Buy has engaged in no "conduct that threatens an incipient violation of an antitrust law." *Cel-Tech Communications, Inc.*, *supra,* 20 Cal.4th at 187.

41.     Plaintiff Sub Corp is not entitled to injunctive relief or damages based upon the alleged violation of the Unfair Competition Law.

### E.     Evidentiary Objections and Request For Judicial Notice

42.     Best Buy's objections to plaintiff's evidence are sustained.

43.     The Court grants Best Buy's requests for judicial notice.

### F.     Ruling on Motion

44.     As there exists no genuine issue of material fact remaining to be tried with respect to Sub Corp.'s claims for an injunction and damages, Best Buy is entitled to summary judgment on Sub Corp.'s Complaint.

45.     Judgment shall be entered in Best Buy's favor consistent herewith. The Court has read and considered each of the facts set forth herein and finds each supported by uncontroverted evidence. I adopt them in support of summary judgment.

Dated: August 5, 2008                    _____
                                          Honorable Manuel L. Real
                                          United States District Court Judge

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1
2
3  Submitted by:
4
5  DATED: May 5, 2008             **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
6
7                                 By:    /s/ Michael A. Geibelson
8                                        Michael A. Geibelson
                                         David Martinez
9                                        Rebecka M. Biejo
                                         Attorneys For Defendant
10                                       Best Buy Stores, L.P. (erroneously sued and
                                         served herein as Best Buy Co., Inc.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

60202964.4                      - 12 -          STATEMENT OF UNCONTROVERTED
                                                FACTS AND CONCLUSIONS OF LAW